FILED

07 NOV 20  AM 11: 34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1   YOUR NAME
    YOUR ADDRESS
2   YOUR TELEPHONE NUMBER

3   Lyle J. Hitchcock
    5902 Streamview Dr. , Apt 2
4   San Diego, Calif. 92105
    Tel. (619) 795-4776
5

6

7

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA
                 (Must start on line 8 or below)
10

11   Lyle J. Hitchcock              )
                                    )
12                                  )
                                    )
13              -v-                 )        '07CV 2211    BEN NLS
     Stan Stanley                   )      Case No._____
14   Richard Burtz, and             )        (To be assigned at time of filing)
     Pathfinder's of               )
15   San Diego, Inc.               )
                                    )
16                                  )      COMPLAINT FOR (Brief description of document)

17                                         Violation of Civil Rights Under
                                           Title 42 USC 1983, 1985(3),1986
18   Plaintiff alleges: (SEE ATTACHED)

19                                         (JURY DEMAND)

20

21

22

23

24

25

26

27

28
     ::ODMA\PCDOCS\WORDPERFECT\6869\1 May 26, 1999 (2:51pm)

**PLAINTIFF ALLEGES:**

1. Plaintiff Lyle J. Hitchcock states that he is a 61 year-old single male who shares an apartment with another single male Todd Blethen, at the Pathfinders Shelter Plus Care apartments consisting of ten apartments, with two men occupying each apartment. Plaintiff has lived at this facility and location for four and one-half years.

2. Pathfinder's of San Diego, Inc., administers the Shelter Plus Care Program for and in conjunction with San Diego Housing Commission, as well as Dept. of Housing and Urban Development. Shelter Plus Care is financed one-third by San Diego Housing Commission, one-third by HUD, and one-third by Pathfinder's residents. Pathfinder's of San Diego runs the general day-to-day management of the Pathfinder apartment at 5902-5908 Streamview Dr., San Diego. In addition they collect rents, inspect apartments, dictate rules and policy as well as delegate punishment among the 19 residents when they deem appropriate. The set policy and procedure when rules are broken or there is a complaint against another resident that needs to be enforced; then the complaint is taken to one of two resident-managers. If the complaint at issue cannot be resolved by the two resident managers, then it is given to the single Pathfinder staff member (Tim) living in residence at Streamview apartments. If there is no satisfaction in resolving complaint from resident-staff member (Tim) the complaint is given to Richard Burtz, Program Manager. Finally, if Richard Burtz cannot or will not resolve the problem or complaint, it is then submitted to the General Manager Stan Stanly for the ultimate review and determination. During the last ten years, this is how all disputes were resolved at Pathfinder's Streamview Apartment to the best of Plaintiff's knowledge.

1

### 3. **FIRST CAUSE OF ACTION**

4. On or around March 16, 2005, at the 7:00a.m. Pathfinder's Shelter Plus Care daily meeting at the Streamview Dr. apartments, Plaintiff Lyle J. Hitchcock suggested to another resident that he quiet down and join the meeting that had already started. Upon hearing that statement that resident Jeff Tanenbaum, charged 20 feet across from adjoining room waving his fists and shouting, "Fuck you, I can do whatever I want". Plaintiff Hitchcock assumed a defensive stance because he thought that he was about to be hit. This incident and verbal assault took place in front of 14 residents and defendant Richard Burtz, the Program Manager. Plaintiff Lyle J. Hitchcock demanded defendant Burtz immediately sanction resident Jeff Tanebaum for threatening behavior. In addition Plaintiff Hitchcock also submitted a written memorandum detailing incident, When defendant Burtz refused, Plaintiff Hitchcock sought a restraining order on advice of his friend, attorney James Byrnes (TRO Number GIC 852758 dated 8/22/05—San Diego Superior Court), (Exhibit 1, Pg. 1-2).

5. The defendant Richard Burtz violated the constitutionally secured and protected right of equal protection under the Fourteenth Amendment when he ignored or flat-out refused to follow set policy, rules and guidelines of the Pathfinder Shelter Plus Care Program. By his actions, inaction or failure to act to remove or discharge Jeff Tanebaum for violent and threatening behavior and state law violations the defendant Richard Burtz caused the Plaintiff Lyle J. Hitchcock emotional distress, mental duress, personal injury, as well as irreparable harm.

### 6. **SECOND CAUSE OF ACTION**

7. On or around July 1, 2006, a Pathfinder resident named Steve Folk intentionally drove is 1987 Nissan sedan into the side of Plaintiff's 1991 Ford Ranger truck while it was parked in

the driveway at the Pathfinder Apartments located at 5902 Streamview Dr., San Diego, CA. The defendants Stan Stanley and Richard Burtz were notified by written memorandum that the collision occurred on Pathfinder property and that it was intentional. No action was taken and no investigation was undertaken (Exhibit 2, Pg. 3), (Exhibit 3, Pg. 3-4)

8. The defendants Stan Stanley and Richard Burtz, each one, severally and together, and in concert with each other, violated the constitutionally secured and protected right of equal protection under the law and the right not to be deprived of Plaintiff's property without due process of law when the defendants refused to follow set policy and written rules of the Pathfinder Shelter Plus care program, by not removing or discharging Steve Folk for destruction of said property, as well as subsequent replacement in like kind of said property, and for state law violations. By their acts, inaction, or failure to follow the rules, guidelines, uses and customs of Pathfinder Policy, the defendant Stan Stanley and Richard Burtz, caused the Plaintiff Lyle J. Hitchcock severe emotional distress, mental duress, personal injury, as well as irreparable harm (Exhibit 6, Pg. 12, No. 4).

## 8. THIRD CAUSE OF ACTION

9. During and around the months of March through May, 2006, the Plaintiff Lyle J. Hitchcock verbally complained to the defendant Richard Burtz about his roommate Todd Blethen not sharing monthly apartment expenses for upkeep and maintenance. In addition the Plaintiff submitted a written memorandum detailing the fact that roommate Todd Blethen was unlawfully charging telephone information charges to Plaintiff's telephone. Further, these charges were tied to Plaintiff's bank account and that incurred extra charges of $33.00 each time or $66.00 when bank account twice went into overdraft due to roommate Blethen's unlawful charges (Exhibit 4, Pgs. 8-9). This unlawful use of the telephone occurred a fourth time on Sept

3

15, 2007 despite a prior written memorandum (certified mail no. 7005 1820 0003 1536 3323 dated 8-15-06) to both defendants (Exhibit 3, Pg. 2).

10. The defendants Stan Stanley and Richard Burtz, each one, severally and together, and in concert with each other, violated the constitutionally secured and protected right of equal protection under the law and the right not to be deprived of Plaintiff's property (money) without due process of law, by the defendants refusal to follow set rules and written policy of Pathfinder's when they did not remove or discharge Todd Blethen for theft of monies from Plaintiff's bank account and for state law violations. By their acts, inaction, or failure to act, or follow the guidelines, customs and usages of Pathfinder Policy, the defendants Stan Stanley and Richard Burtz, caused the Plaintiff Lyle J. Hitchcock, severe emotional distress, mental duress, personal injury, as well as irreparable harm (Exhibit 6, Pg. 12, No. 4)

## 11. **FOURTH CAUSE OF ACTION**

12. On or around July 25, 2007, at 7:00 a.m., the Plaintiff, Lyle J. Hitchcock discovered his wallet and money ($175.00) missing of his desk in his bedroom. During the next hour the Plaintiff continued to complain loudly to his roommate about missing money and wallet whereby roommate Todd Blethen came up with a lame story in a cover-up of the theft of the wallet. The Plaintiff then told the defendants Stan Stanley and Richard Burtz that his roommate Todd Blethen and his girl friend took the money and wallet, in which the wallet was returned the following day from a nearby 7-11 store. The Plaintiff on more that one occasion demanded that defendants question roommate about missing money and as to why girlfriend was in roommates apartment bedroom at 5:00 a.m. The defendants Stan Stanley and Richard Burtz told the Plaintiff that he would have to investigate the matter himself, without their help (Exhibit 6, Pg. 15).

4

13.  The defendants Stan Stanley and Richard Burtz, each one, severally and together, and in concert with each other, violated the constitutionally secured and protected right of equal protection under the law and the right not to be deprived of property without due process of law when they refused to follow set policy and written rules of Pathfinder Shelter Plus Care Program when they did not initiate a simple investigation and inquiry into the matter, then remove or discharge Todd Blethen for theft of Plaintiff's money and wallet from his apartment.  By their acts, inaction, or failure to act, or to follow the rules, guidelines, uses and customs of Pathfinder Policy, the defendants Stan Stanly and Richard Burtz caused the Plaintiff Lyle J. Hitchcock severe emotional distress, mental duress, personal injury, as well as irreparable harm.

## 14.  **FIFTH CAUSE OF ACTION**

15.  On August 10, 2007, at around 10:00 p.m., and while the Plaintiff Lyle J. Hitchcock was asleep on front room couch, an unknown man entered the apartment of the Plaintiff, went down the hall, placed a box in the bedroom of Plaintiff's roommate, Todd Blethen.  The unknown person then walked back through the hall and left the apartment.  When Plaintiff's roommate Todd Blethen returned from hospital several weeks later, he brought the same man into the house on Saturday, September 8, 2007, and again on September 15, 2007.  At that time, and when confronted about unlawful entry, roommate Blethen admitted on September 15, 2007, that his friend told him of entering Plaintiff's apartment nearly one month earlier at 10:00 p.m. on August 10, 2007.  The Plaintiff told the defendants Stan Stanley and Richard Burtz of the unlawful entry into his apartment by his roommate's friend.  Notwithstanding night-time entry into inner city neighborhood apartments, and as a San Diego Police high priority, the defendants refused to investigate matter or speak to Plaintiff's roommate, Todd Blethen.(Exhibit 6, Pg. 15).

5

16. The defendants made the following statement while questioned when they were going to investigate this matter. Stan Stanley stated, "You guys out there (at Streamview Dr. Apartments) just leave your doors open and your screen doors unlocked so anyone can wander into your apartment anytime of day or night". Then, Richard Burtz stated, "The reason that you (Lyle) have those types of problems out there (at Streamview) is because you are still there. If you left (moved), then you would not have any of those problems".

17. The defendants Stan Stanley and Richard Burtz, each one, severally and together, and in concert with each other, violated the constitutionally secured and protected right of equal protection under the law when the defendants refused to follow set policy and written rules of the Pathfinder Shelter Care Plus Program and, by not removing or discharging Todd Blethen for association with known parolee that had just been released from prison, and for state law violations. By their acts, inaction, or failure to act, the defendants Stan Stanley and Richard Burtz caused the Plaintiff severe emotional distress, mental duress, personal injury, as well as irreparable harm.

18. ## **SIXTH CAUSE OF ACTION**

19. On or aound September 29, 2007, at 7:45 a.m. Defendant Richard Burtz went to Plaintiff's apartment. Plaintiff just returned from store. There was fresh smell or marijuana from apartment. Plaintiff stated defendant Richard Burtz, "Todd is smoking weed again". Defendant Burtz did nothing and said nothing. The following Thursday October 4, 2007, after morning meeting at 8:00 a.m. the smell of marijuana once again manifested at Apartment No. 2, the Plaintiff's apartment. Only Todd Blethen, Plaintiff's roommate was in the apartment because he left morning meeting early. Plaintiff called Jeff Jones, a Pathfinder resident manager, and another resident Oliver McIntosh, to the apartment to confirm that the smell was in fact

6

marijuana. Indeed, it was confirmed that it was marijuana. Todd Blethen was questioned

repeatedly by Jeff Jones and Oliver McIntosh. He simply denied smelling anything. Both

defendants, Stan Stanley and Richard Burtz were immediately notified. Both defendants said

they would look into the matter of Todd Blethen using drugs at Streamview Dr. and at Plaintiff's

apartment. A few days later defendant Stan Stanley was contacted by telephone. Defendant

Stanley stated that the staff and management at Pathfinder's would not tolerate drug use of any

type. Both defendants again said they would take care of the matter immediately. From October

4, 2007, nothing has been done by the defendants about Plaintiff's roommate Todd Blethen, and

his drug use (Exhibit 6, Pg. 11).

20. The defendants Stan Stanley and Richard Burtz, each one, severally and together

and, in concert with each other, violated the constitutionally secured and protected right of equal

protection under the law when the defendants refused to follow set policy and written rules of

Pathfinder Shelter Plus Care Program and, when they did not remove or discharge Todd Blethen

for state law violations. By their acts, inaction, or failure to act as well as follow the rules,

guidelines, uses and customs of Pathfinder Policy, the defendants Stan Stanley and Richard

Burtz caused the Plaintiff Lyle J. Hitchcock severe emotional distress, mental duress, personal

injury, as well as irreparable harm.

21. **SEVENTH CAUSE OF ACTION**

22. The Plaintiff Lyle J. Hitchcock was robbed of $175.00 from the bedroom of his

apartment at 5:00 a.m. on July 25, 2007. Six days later, on or around July 31, 2007, the Plaintiff

Hitchcock was given a 30 DAY NOTICE TO VACATE dated July 31, 2007 by defendant

Richard Burtz. Several days later, on or around October 4, 2007, Plaintiff Hitchcock attempted

to pay his monthly apartment rental of $247.00 to Marylyn, the secretary in the Pathfinder San

7

Diego main office, 3806 Grimm Avenue, San Diego, CA.  She refused the Plaintiff's cash

payment.  Two weeks later on 10-16-07, Plaintiff Hitchcock was given a letter dated October 5,

2007, stating that he was being evicted from his apartment, and the "reasons" for his eviction

(See Exhibits 7, 8, 9, 10--Pgs. 16-20).

23.  The defendants Stan Stanley, Richard Burtz, each one severally, as well as together,

and acting on behalf of defendant Pathfinder's of San Diego, retaliated against the Plaintiff, Lyle

J. Hitchcock for loudly demanding from both defendants his right to file a police report on theft

of money from his apartment on 7-25-07, and indirectly for asserting his rights is causes of

action one through six.  Moreover, the defendants Stan Stanley and Richard Burtz' attempts to

evict the Plaintiff Lyle J. Hitchcock for asserting his constitutional rights are in violation of 24

CFR 582.320(a), and  (b)(2), HUD statutes under which they operate, as well as violation of the

state law in not reporting a crime (obstruction of justice) and, extortion-Defendant Richard Burtz

threatened eviction of Plaintiff for demanding to file a police report or reporting a crime in his

apartment by his roommate Todd Blethen on 7-25-07, and 7-27-07.  Defendant Stan Stanley

threatened to evict the Plaintiff if he could not pay his rent because of the money he lost in the

two thefts from inside his apartment on July 25th and 27th, 2007.

24.  The defendants Stan Stanley and Richard Burtz through Pathfinder's Inc., knew or

should have known that, by evicting the Plaintiff they were violating the constitutional rights of

the Plaintiff Lyle J. Hitchcock, and they knew or should have known that they were in violation

of federal law under Title 42 USC 1983, 1985(3), 1986, as well as 24 CFR 582.320(a), and

(b)(2), when they failed to act to protect the civil rights of the Plaintiff Lyle J. Hitchcock in

causes of action one through six.   The defendant's disparate treatment of the Plaintiff as well as

retaliatory eviction, including their acts, inaction, or failure to act in causes of action one through

8

seven caused the Plaintiff Lyle J. Hitchcock severe emotional distress, emotional duress, personal injury, as well as irreparable harm.

DATED  11/20/07

Signed _____
                Lyle J. Hitchcock

                Attorney for the Plaintiff

9

# **EXHIBITS**

(Table of Contents)

Exhibit 1—Temporary Restraining Order8-22-05-Sheriff' Service 8/25/05............1-2

Exhibit 2—Photographs of Plaintiff Hitchcock' Ford truck 7-1-06......................3

Exhibit 3—Memorandum to defendants Pathfinder Office 8-15-06.....................4-7

Exhibit 4—Cox telephone bills 8-08-07 and 10-09-07.....................................8-9

Exhibit 5—Declaration of Oliver MacInstosh 11-15-07...................................10

Exhibit 6—Pathfinder Guidelines, Rules, and Personal Rights...........................11-15

Exhibit 7—Plaintiff's original Pathfinder Occupancy Agreement 8-04-03..............16

Exhibit 8—HUD guidelines for a Pathfinder participant eviction 24 CFR 582.320....17-18

Exhibit 9—NOTICE TO VACATE Shelter Plus Care apartment.........................19

Exhibit 10-Pathfinder "Reason for Eviction" letter of 10-05-07..........................20

Exhibit 11-SSI statement for "Proof of Income" as of 10-19-04..........................21

**CH-100**    **Request for Orders to Stop Harassment**

NO FEE CCP 527.6

Clerk stamps date when form is filed.

2005 AUG 22 A 11: 42

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

(1) Your name (person asking for protection):
KYLE J. HITCHCOCK

Your address (skip this if you have a lawyer): (If you want your address to be private, give a mailing address instead):

5902 STREAMVIEW DR. APT. 2
City: SAN DIEGO    State: CA    Zip: 92105

Your telephone number (optional): (619) 795-4776

Your lawyer (if you have one): (Name, address, telephone number, and State Bar number):

_____
_____
_____

(2) Name of person you want protection from:
JEFF TANENBAUM

Describe the person: Sex: ☑M ☐F Weight: 160
Height: 5'8"    Race: CAUC.    Hair Color: BROWN
Eye Color: BROWN    Age: 47    Date of Birth: N/A
Home Address (if you know): 5902 STREAMVIEW DR APT. 3
City: SAN DIEGO CA.    State: CA    Zip: 92105
Work Address (if you know): PATHFINDER'S INC. 8306 GRIM ST
City: SAN DIEGO    State: CA    Zip: 92104

Fill in court name and street address:
**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
☑ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD. SAN DIEGO, CA 92123-1187
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
Court fills in case number when form is filed.

Case Number:
**GIC 852758**

(3) Besides you, who needs protection? (Family or household members)

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| JOSE WALKER | MALE | 50 | ☐ Yes ☑ No | FRIENDS of KJH |
|  |  |  | ☐ Yes ☐ No |  |
|  |  |  | ☐ Yes ☐ No |  |
|  |  |  | ☐ Yes ☐ No |  |

☐ Check here if you need more space. Attach a sheet of paper and write "CH-100, item 3—Describe Protected Persons" at the top of the page.

(4) Why are you filing in this court? (Check all that apply):
☑ The person in ② lives in this county.
☑ I was hurt (physically or emotionally) by the person in ② here.
☑ Other (specify): I WAS PHYSICALLY THREATED TWICE, AND JOSE WALKER TREE TIMES

(5) How do you know the person in ②? (Describe):
WE BOTH ARE CLIENT/RESIDENTS OF PATHFINDERS SHELTER CARE PLUS PROGRAM - WE BOTH LIVE AT 5902 STREAMVIEW DR., SAN DIEGO, CA., 92105 - I AM IN APT. 2 HE LIVES IN APARTMENT 3.

**EXHIBIT 1**
This is not a Court Order.

Judicial Council of California, www.courtinfo.ca.gov
Revised January 1, 2005, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Orders to Stop Harassment**
(Civil Harassment)

CH-100, Page 1 of 4

—1—

CLS

LC03-D05

HITCHCOCK, LYLE J
5902 STREAMVIEW DR #2
SAN DIEGO CA 92105-3932

ASHFORTH
1409 FOURTH AVE
SAN DIEGO, CA 92101
SHERIFF'S DEPARTMENT
COUNTY OF SAN DIEGO
HEARING DATE: 09-07-05    CERTIFICATE OF SERVICE
HEARING TIME: 09:00
COURT: SAN DIEGO SUPERIOR                    CASE NO.    GIC852758 01

HITCHCOCK/LYLE                   VS TANENBAUM/JEFF
              PLAINTIFF                      DEFENDANT

    I, THE UNDERSIGNED, SHERIFF OF THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA,
DO HEREBY CERTIFY THAT J KLEPACH
DID SERVE THE BELOW LISTED PROCESS

NOTICE OF HEARING AND TEMPORARY RESTRAINING ORDER (CLETS)
REQUEST FOR ORDERS TO STOP HARASSMENT
ANSWER TO REQUEST FOR ORDERS TO STOP HARASSMENT
PROOF OF FIREARMS TURNED IN OR SOLD


BY DELIVERY AT: (RES) 5902 STREAMVIEW DR #3/SAN DIEGO/CA/92105

ON: 08-25-05  AT: 2050 HRS,   IN THE COUNTY OF SAN DIEGO, STATE OF
CALIFORNIA, ON THE WITHIN NAMED INDIVIDUAL OR ENTITY:
JEFF TANENBAUM


BY DELIVERING TO AND LEAVING WITH
SAID DEFENDANT/PETITIONER/RESPONDENT PERSONALLY,  A COPY THEREOF.




                              WILLIAM B. KOLENDER, SHERIFF

  FEES:  $30.00 (IN FORMA PAUPERIS)
  DATE: 08-26-05


EXHIBIT A    W B Kolender

2

- 2 -



EXHIBIT 2

- 3 -

EXH 2

MEMORANDUM

To: Richard Burtz and Stan                                     Date 8-15-06
Pathfinder Shelter Care
3806 Grimm Ave.
San Diego

From: Lyle J. Hitchcock
5902 Streamview Dr.
Apt. 2
San Diego, Calif. 92105

Subject:  Freedom from Bodily Threat or Harm at Pathfinder's Streamview Apartments
          Freedom of Threat or Harm to Personal Property at Streamview Apartment

Re:  Failure to Act.  Three verbal requests and now Fourth Formal and Written Notice to
administrative staff at Pathfinder's Inc. of specific client's violations of the personal and
civil rights of other client's in residence at the Streamview Apartments.

---

　　　　This memo is a follow up of a meeting that I had with Richard Burtz on Friday 7-
21-06 about the conduct of my room mate Todd B., at Streamview Dr. apartments.  In
addition, the memo follows up at least three telephone requests to Stan to speak to Todd
about his abhorrent behavior as reported to staff by me over the past three months.  In
fact this is the third or fourth time I have brought this matter to the attention of
management.  This is the same scenario developing that developed before with Jeffery
Tanubaum whereby I was proved correct after I filed a Temporary Restraining Order.
　　　　As you recall this behavior included but was not limited to threats to my person.  I
have again been threatened by my existing roomate.  In addition his behavior includes,
but is not limited to, passing out for two to three hours at a time in the bathroom or in
the kitchen of our apartment, or for three hours on the chairs outside of the apartment
from 12:00 a.m. to 3:00 a.m.  I might remind you I have eye witnesses to some of these
episodes.  Furthermore Todd has missed entirely or was has been late to morning
meetings at least once, but more often, twice a week for the past eight to ten weeks, with
no sanctions.  By not punishing Todd, it merely enables his anti-social behavior.
　　　　Since my meeting last Friday with Richard Burtz the following has occurred in
our apartment at Streamview Dr.  Last Saturday night Todd threatened me by stating that
if I was younger he would "show me who was right".  The implication was clear, and,
that he not a stranger to resorting to physical violence to solve matters.  In fact on
Saturday night he got so mad that I had to lock him out of the apartment for a few
minutes when he threatened me for the third time and while he calmed down.  When I let
him in he was pointed at me in a threatening manner almost hitting me on the chest.
　　　　During the past week he has been mouthy and abusive when I ask him to clean up
the bathroom which is his stated domain for cleaning.  When he finally does the

**EXHIBIT 3**

**- 4 -**

bathroom in his half-assed way, he says something like, "Just make sure you do the kitchen". It is my contention that he does about one tenth of the household chores around here. As stated before he has been mouthy and abusive in addressing me, especially after his "friend" visits daily.

Our housemate relationship however finally broke down on Thursday night 7/27/06. The first incident occurred around 11:00 p.m., when he woke up from a dead sleep, came out of his bedroom and said, "Did you call me"? I said no. He asked if I was sure. I said no. Clearly, he had a an auditory hallucination. I as watching a movie about Peter Pan and he said, "What is this?" I said it was a movie about tinker bell. He said, "That figures, you like movies about perverted things. You probably surf the internet about kiddy porn. I said it's a movie about tinker bell. Don't you know about tinker bell. He said, "That's it, you like surfing the internet for little boys. I told him that his statement just showed me how fucked up and ignorant you really are. He kept grumbling about kiddy porn and other subject for about ten minutes and then he went to bed. I watched the entire movie called "Finding Neverland" starring Johnny Depp and then went to sleep, only to be awoken at three a.m. by his snoring on the other couch in living room. He has sleep apnea that is very annoying. I told him to go to bed. He said that he did not have to and told me to get fucked and turned on the television. I told him to turn off the television. He said that he could do anything he wanted to in the apartment like watching television at three or four a.m.

I had gas pain in my stomach and even though I was mad, I did not say anything and withdrew to my bedroom. Ten minutes later he went to bed in his own room and 20 minutes later I came back out in living room and went to sleep, only to waken at four a.m. by the television again. I asked him what the fuck he was doing and he said that he could watch t.v. whenever he wanted. I still had the pain in my stomach from gas and did not argue. I once again withdrew to my bedroom and ten minutes later he went to bed again, and this time for good. I came back out but did not sleep much. He did this on Thursday night 7-28-06, and again on Sunday and Monday nights 7-30-06, and 7-31-06.

I have complied with every request from staff on how to deal with this matter, but meanwhile nothing has changed with respect to Todd's behavior, except it is now growing and cycling worse. I have requested staff three times, both Richard and Stan, in as many months to intercede, and simply talk to him about these matters. To this date, management at Pathfinders have failed to honor my three verbal requests and simply talk to him about his conduct and attitude toward other people. This failure emboldens him to cause further harm.

Todd has charged 411 calls to my telephone despite clear and direct orders not to do so. These overcharges are automatically taken from my checking account exposing me to overdraft charges which I have incurred. In addition he has left the house open on five occasions. Each and every time Todd is confronted about his abuses and excesses he simply denies any wrong-doing.. He thinks simple denial or a lie is a very effective tactic because it has served him well in the past but it does not wash with me.

With Todd's gang-banger look and style, his shadowy friend, auditory hallucinations, coupled with threatening behavior and his passing out for several hours on many occasions now pose a very serious and dangerous risk, one I am not willing to take

**EXHIBIT 3**

**-5-**

any longer without formal notice to management at Pathfinder's as well as my attorney James Byrnes. This I know is a short-coming on my part but I am only human and sooner or later I will stand my ground without compromise, especially if he continues his combative and disrespectful attitude. When it happens, the outcome is anyone's guess

The following is a list of his behavior.

1. One of 25 times he empties the trash he does not replace the liner.
2. Every single day he leaves an ashtray with ten or fifteen cigarette butts which I come home to and have to clean.
3. He leaves the bathroom mirror greasy and smudged once or twice a weak when he nods off in the bathroom with his head on the mirror. He smudges one half of the mirror over the matter of hours in the bathroom.
4. Every day he leaves my coffee pot on when he leaves the house (after me), which will burn the heating element.
5. On five occasions he has forgotten to close and lock the front door. I come home to both the door and screen door are wide open. He leaves screen open 5 times a day which I have to close, reminding him of the flies, etc.
6. Daily he leaves food scraps in the right side of sink, never even bothering to use the disposal, which attracts all kinds of critters, day and night.
7. He leaves the radio in his room blaring day or night whether he is here or not, and without caring if someone is watching the tv in living room over his noise.
8. On daily basis he leaves approximate one cup of water on bathroom floor or on counter in bathroom. The same in the kitchen. The other night I slipped and banged my knee into bathroom wall. I have a torn cartilage in that knee. Never mind the hygiene part of the problem.
9. He leaves smelly debris in the microwave almost daily.
10. He incurred charges on telephone despite several admonitions to the contrary.
11. He totally destroyed my brand new Teflon skillet by using metal spatula several times. He never asked to use it. Now he sets sauce pans on it daily, after he finally learned to take them off the stove after using them.
12. On Friday and Saturday night, August 11 and 12, Todd and his girl friend spent the night here. This is 8th time this has happened. Jeffery was informed on Saturday morning August 11, 2006.

As mentioned before Todd has missed at least 8 meeting in as many weeks. He missed meetings on the following days--July 3, July 19, July 27 and Aug. 3, 2006. The month before he missed as many meetings. During this two month interval he was also late as many as 10 times. Yet, the people you have appointed to keep track of such things, Richard L., Jeffery, Tim have not written up one absence. Further, on each and every day he missed a meeting he has left the premises. Any reasonable person could conclude that he is not sick at all, but just throwing this disdainful disrespect in everybody's face.

In another matter I told Stan on 7-21-06 when he was at Streamview Dr. apartments, that another member of Pathfinder's intentionally rammed my car, on or around July 1, 2006, while parked in the driveway at the Streamview Dr. apartments owned by Pathfinders. At that time I told Stan the identity of the person. He said that he would deal with the matter. When nothing happened I called Stan again on Saturday

**EXHIBIT 3**

**-6-**

August 5, and again on August 9, 2006.  Stan told me to meet with Richard which I did
~~on August 9, 2006.  In the phone call with Stan and in the meeting with Richard a~~
meeting was set to discuss the situation on Thursday August 10, 2006.  By the way, in my
meeting with Richard he said that I was doing "very good" in dealing with this matter.

The meeting between Stan, Richard B., and myself was set for last Thursday
August 10, 2006, after the morning meeting.  That meeting was shelved when Stan out of
~~the blue attacked me twice at the regular morning meeting and was totally scrapped when~~
he told me to "pack my bags".  Because I had expected to deal with Todd and his
behavior, and the person who totaled my car, I certainly did not expect to be attacked
twice at the meeting by Stan.  That tore my psyche apart and threw me into a the worst
depression I have had since 2002, when I lost my job and lawsuit against Chula Vista
~~Police.~~

This same person who totaled my car has also missed approximately 8 meeting in
about as many weeks and leaves the compound here at Streamview Dr. each and every
day, whether at the meeting or not.  On Thursday, July 21, 2006. the information was
given to Stan after daily morning house meeting and after weekly staff meeting.  That is,
that my truck had been struck on Pathfinder property on July 1, 2006, at 6:30 a.m.  The
same morning around 10:15 a.m., Stan and I were standing in the driveway at the
apartment and Steve Folk was identified as the person who rammed my truck.  From this
perspective relative to the two cars in the driveway, it was quite clear visually that my
truck was not simply "backed into".  As director of Pathfinder's, I believed Stan when he
"take care of it" and then set a meeting to resolve the matter.  I was personally struck,

__, twice attempted to make some type of bad
warning in front of entire group of residents
ting, about the truck crash incident.

tent to inform staff of this misconduct on the
empted to do so on at least three occasions, in
2006.



City Heights Station
SAN DIEGO, California
921059998
0567760105 -0098
08/16/2006    (800)275-8777    04:12:40 PM

```
------------------------------------------
                Sales Receipt
Product           Sale  Unit        Final
Description        Qty  Price        Price
------------------------------------------
SAN DIEGO CA 92104               $0.87
First-Class
2.90 oz.
Certified                        $2.40
Label #:    7005182000031536323
                                 =========
Issue PVI:                       $3.27

Total:                           $3.27

Paid by:
Cash                             $3.27-
```

Bill#: 1000202451687
Clerk: 02

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.
Customer Copy

| U.S. Postal Service™ | | |
| --- | --- | --- |
| CERTIFIED MAIL™ RECEIPT | | |
| (Domestic Mail Only; No Insurance Coverage Provided) | | |
| For delivery information visit our website at www.usps.com | | |
| SAN DIEGO CA 92104 | | |
| O F F I C I A L   U S E | | |
| Postage | $ | $0.87 | 0105 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.27 |

Sent To   PATHFINDER'S INC
Street, Apt. No.;
or PO Box No.  3806 GRIM ST
City, State, ZIP+4  SAN DIEGO, CA 92104

PS Form 3800, June 2002    See Reverse for Instructions

EXHIBIT 3

MEMO AND RESIDENT WRITE
UP DATED 8/17/06 SENT  8-16-06
-9-



August 8, 2007

Account Number: **501 3110 030218808**

LYLE J HITCHCOCK

Page 3 of 5

## Payments

| Date | Type | Amount |
|------|------|--------|
| 08/01/07 | THANK YOU FOR YOUR PAYMENT | -5.14 |
| | **Total Payments Received** | **$-5.14** |

## Cox Digital Telephone Service

Telephone Service for
619-795-4776

| | Quantity | Amount |
|---|---|---|
| **Monthly Telephone Service from Aug 12 to Sep 11** | | |
| *CA LIFELINE FLAT RATE SERVICE | 1 | 4.99 |
| *Total Monthly Telephone Service* | | *$4.99* |
| **Telephone Usage Charges** | | |
| Call Return | 2 | 1.98 |
| Dir Assist & Local Usage Charges | 3 | 2.97 |
| Cox Long Distance | 1 | 0.07 |
| *Total Telephone Usage Charges* | | *$5.02* |



| | |
|---|---|
| **Total Telephone Service for 619-795-4776** | **$10.01** |

Your current IntraLATA carrier is CUSTOMER HAS NOT SELECTED . Their customer
service number is NONE.
Your current InterLATA carrier, including International calls is CUSTOMER HAS NOT
SELECTED . Their customer service number is NONE.

| | |
|---|---|
| **Total Cox Digital Telephone Service** | **$10.01** |

## Cox Digital Telephone Service Call Detail

### Call Detail for 619-795-4776

**Cox Long Distance**

| Date | Time | Place | Number | Rate/Time | Min:Sec | Amount |
|------|------|-------|--------|-----------|---------|--------|
| July 15 | 10:59A | PASADENA, CA | 626-440-1916 | DD/N | 1:00 | $0.07 |
| **Total Cox Long Distance** | | | | | **1 : 00** | **$0.07** |

**Rate Codes**

| | | | |
|---|---|---|---|
| DD = Direct Dialed | CP = Calling Card Person/Person | CC = Calling Card | WC = WebConferencing |
| OS = Operator Station/Station | OP = Operator Person/Person | OC = Operator Collect | |

**Time Codes**

| | | | |
|---|---|---|---|
| Domestic: D = Day | E = Evening | N = Night/Weekend | S = Payphone Surcharge |
| International: R = Standard | T = Discount | Y = Economy | M = Mobile |

EXHIBIT 4

-8-

*Indicates basic or local Telephone Charges



6400 XC RP 12 0014250 08092007 NNYNNNNN 01

August 8, 2007

Account Number: **501 3110 030218808**

LYLE J HITCHCOCK

Page 4 of 5

www.cox.com

---

## Fees, Surcharges & Taxes

| Telephone Fees, Surcharges & Taxes | Amount |
|---|---|
| *Telephone - Government Fees & Taxes* | |
| Federal Tax | 0.30 |
| CA Relay Svc and Comm Dev | 0.02 |
| E911 Tax | 0.03 |
| Universal Lifeline Service | 0.06 |
| CA High Cost Fund Surcharge A | 0.01 |
| CA High Cost Fund Surcharge B | 0.07 |
| State Regulatory Fee | 0.01 |
| California Teleconnect Fund | 0.01 |
| *Total Telephone Fees, Surcharges & Taxes* | *$0.51* |
| **Total Fees, Surcharges & Taxes** | **$0.51** |







6400 0340 XC RP 12   77 10102007 NNNNNNNN   01

October 9, 2007

**Account Number: 501 3110 030218808**

LYLE J HITCHCOCK

Page 3 of 4

**COX**
**COMMUNICATIONS**

www.cox.com



---

## Payments

| Date | Type | Amount |
|------|------|--------|
| 10/03/07 | THANK YOU FOR YOUR PAYMENT | -5.14 |
| **Total Payments Received** | | **$-5.14** |

## Cox Digital Telephone Service

Telephone Service for
619-795-4776

| Monthly Telephone Service from Oct 12 to Nov 11 | Quantity | Amount |
|---|---|---|
| *CA LIFELINE FLAT RATE SERVICE | 1 | 4.99 |
| *Total Monthly Telephone Service* | | *$4.99* |
| **Telephone Usage Charges** | | |
| Dir Assist & Local Usage Charges | 5 | 4.95 |
| *Total Telephone Usage Charges* | | *$4.95* |

| | |
|---|---|
| **Total Telephone Service for 619-795-4776** | **$9.94** |

Your current IntraLATA carrier is CUSTOMER HAS NOT SELECTED . Their customer service number is NONE.
Your current InterLATA carrier, including International calls is CUSTOMER HAS NOT SELECTED . Their customer service number is NONE.

| **Total Cox Digital Telephone Service** | **$9.94** |
|---|---|

---

## Fees, Surcharges & Taxes

| Telephone Fees, Surcharges & Taxes | Amount |
|---|---|
| Telephone - Government Fees & Taxes | |
| Federal Tax | 0.30 |
| CA Relay Svc and Comm Dev | 0.02 |
| E911 Tax | 0.02 |
| Universal Lifeline Service | 0.06 |
| CA High Cost Fund Surcharge A | 0.01 |
| CA High Cost Fund Surcharge B | 0.06 |
| State Regulatory Fee | 0.01 |
| California Teleconnect Fund | 0.01 |
| *Total Telephone Fees, Surcharges & Taxes* | *$0.49* |
| **Total Fees, Surcharges & Taxes** | **$0.49** |

EXHIBIT 4



-9-

*Indicates basic or local Telephone Charges

6400 ___ C RP 12  0028477 10102007 NNNNNNNN   01
October 9, 2007

# COX
**COMMUNICATIONS**                    www.cox.com

**Account Number: 501 3110 030218808**

LYLE J HITCHCOCK

Page 4 of 4

---

## Important Customer Information

**WHEN TO PAY YOUR BILL**
Your payment is due upon receipt of your bill. If payment is not received for services in full by the "Due By" date, charges will become past due. If your services are disconnected for non-payment: 1. To reconnect Cox Digital Telephone, you must pay the telephone balance in addition to reconnect charges and required deposits. 2. To reconnect Cox services, you must pay the entire account balance, plus any reconnect charges and required deposits.
**Partial Payment:** If your billing statement contains both charges for regulated Cox Digital Telephone services and charges for other, unregulated Cox Communications video or data services, and you make a partial payment without specifying how the partial payment should be applied between regulated and unregulated services, the partial payment will first be applied to the oldest aged balances. Within the oldest aged balance, Telephone service balances will be applied first, followed by Cox Cable TV and then Cox High Speed Internet services.

**HOW TO PAY YOUR BILL**
**EasyPay Automatic Payments:** With Cox's EasyPay Automatic Payment Service, your payment is automatically deducted from your checking, savings or credit card account each month. Enrollment forms are available on the Cox Web Site at www.cox.com/easypay or call 619-262-1122 or 760-599-6060. Maximum debit is $5000 per month. For Cox Business services please call 1-866-269-7555.
**Pay Online:** Visit www.cox.com to register for 24-hour online access to your Cox Communications account. You can make a one-time payment using your credit card. Pay Online access is for residential customers only.
**Pay By Phone:** Call 1-800-715-4778, 24 hours a day / 7 days a week. Follow the phone prompts to make a payment using your bank account or credit card. For Cox Business services please call 1-866-269-7555.
**Pay By Mail:** Please mail your check or money order (no cash) in the envelope provided. When mailing your payment write the amount paid to the right of "Amount Enclosed" on your remittance stub. Also, write your account number on your check. Mail your check and remittance stub for Cox Communications, P.O. Box 79171, Phoenix, AZ 85062-9171. Please do not include questions or instructions with your payment.
**Pay In Person:** Visit one of our conveniently located Cox Authorized Payment Centers. Go to www.coxsandiego.com or call 1-800-715-4778 for locations nearest you. For Cox Business services please call 1-866-269-7555.

**Cox Sales and Service Centers -Walk In Assistance, Payments and Product Demonstrations***
EL CAJON: 886 Jackman St., El Cajon, CA 92020 Hours: M-F 9:30 a.m. - 5:30 p.m., Sat. 10:00 a.m. - 3:00 p.m.
OCEANSIDE: 461 College Blvd., Suite 101, Oceanside, CA 92057 Hours: M-F 8:30 a.m. - 6:00 p.m., Sat. 8:30 a.m. - 2:00 p.m.
SAN DIEGO: 1535 Euclid Ave., San Diego, CA 92105 Hours: M-F 9:00 a.m. - 7:00 p.m., Sat. 10:00 a.m. - 4:00 p.m.
SOUTH BAY: 581 Telegraph Canyon Rd., Chula Vista, CA 91910 Hours: M-F 8:30 a.m. - 6:00 p.m., Sat. 8:30 a.m. - 2:00 p.m.
*Product demonstrations and walk in assistance are for residential customers only.

**QUESTIONS ABOUT YOUR BILL**
If you have questions about your bill, please contact us:
**By Email or Live Chat:** Please submit your questions to our E-care team by going to www.cox.com/support/sandiego/contact/sup
**By Phone:** Please call us Mon. - Fri., 8:00 a.m. - 8:00 p.m., Sat. 8:00 a.m. – 5:00 p.m.
Residential Services - Cox Cable TV, Cox Digital Cable, Cox High Speed Internet
San Diego, East and South County ............................................... 619-262-1122
North County ............................................................................... 760-599-6060
Speech & Hearing Impaired – TDD ............................................. 619-262-0466
**Cox Digital Telephone**
San Diego, East, South & North County ..................................... 888-222-7743
**Cox Business Services**
Voice, Video and Data ............................................................... 866-269-7555
**By Mail:** Please mail us at Cox Communications, 5159 Federal Blvd., San Diego, CA 92105.

**LATE PAYMENT CHARGE(S)**
Your bill is subject to a late fee if it is not paid within 27 days from the "Due By" date. For Cox Digital Telephone service(s): This bill is now due and payable; a late fee of 1.5% of the total unpaid balance, calculated monthly, may be charged if the balance is not paid by the Due Date. Should you question this bill, please request an explanation from Cox Communications. You must pay the undisputed portion of your bill. For other Cox residential services: You could be subject to late payment fees of $4.75 per month.

**RETURNED CHECK CHARGE/REJECTED CREDIT CARD CHARGE**
If a check is returned to Cox Communications, or your debit/credit card payment is rejected, your prior authorization for payment, whether electronic, telephonic or by signature authorizes Cox Communications to electronically debit your checking, savings or credit card account for the original amount, plus a service fee of $25.00. If payment has not been collected, we may charge your Cox Communications account for the original amount of the rejected payment plus the service fee of $25.00. In addition, you may be subject to immediate service interruption.

**COLLECTION TRIP FEE - RESIDENTIAL CUSTOMERS ONLY**
In the event your account becomes more than 45 days overdue, a Cox representative may attempt to collect in person. There is a $10 fee for this trip regardless of whether the payment is made at that time. This fee does not apply to telephone service.

**RECONNECT FEE**
If your cable or Internet service is electronically disabled due to nonpayment, your account may be subject to an electronic reactivation fee of $6.99 to restore service.

**BILL DISPUTE & RESOLUTION**
Should you question any portion of your bill, please contact us at one of the appropriate phone numbers listed under "QUESTIONS ABOUT YOUR BILL". If you are dissatisfied with the outcome of the conversation, please request to speak with a supervisor. Your complaint will be investigated. During the investigation, please pay the undisputed portion of your bill. If you disagree with the outcome of the investigation, you may file a complaint as follows:
**For Cable TV:** Please contact your local franchise authority, listed at the bottom of this notice.
**For Telephone Services:** Write to the California Public Utilities Commission, Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call 1-800-649-7570 or TDD 1-800-229-6846. The CPUC also handles complaints of both interstate and intrastate unauthorized carrier changes ("slamming"). The CA consumer protection rules are available online at www.cpuc.ca.gov.

**For Interstate- International Calling Questions:** If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, D.C. 20554, or at fccinfo@fcc.gov, or call 1-888-225-5322 or TTY 1-888-835-5322. To avoid having services disconnected, payment of the disputed portion of the bill should be made 'under protest' to the CPUC or payment arrangements should be made agreeable to Cox Communications, pending the outcome of the CPUC's Consumer Affairs Branch review. The Consumer Affairs Branch shall review the basis of the billed amount, communicate the result of its review to the parties, and inform you of your recourse to pursue the matter further with the CPUC.
**900 or 700 Information Service Charge Disputes:** If you dispute any 900 or 700 information service charge, you may be entitled to a credit. You must request this credit by calling or writing within 30 days from receipt of the bill. Pending review, you may withhold payment of the disputed amount and collection of those charges be suspended. Please pay the undisputed portion of your bill. You have the right to not be billed for interstate 900 calls, which violate federal law. You may request blocking of 900 services. You may be blocked from calling 900 calls for failure to pay legitimate 900 call charges, and the information service provider may seek collection of these charges. Your basic service will not be disconnected for non-payment of 900 charges.
**Tariff Questions:** If you have questions about Cox Communications' telephone service tariffs, please call 1-888-693-8827.
**Your basic telephone services will not be disconnected for non-payment of non-basic telephone or non-telephone charges. Services, which must be paid to retain your local telephone services, are marked with an asterisk (*) on your bill. Failure to pay charges on the bill denoted by an asterisk(*) may result in the disconnection of your basic local telephone service. Failure to pay any other charges on this bill will NOT affect your basic local telephone services, but may result in restriction or disconnection of those services. To avoid having any telephone service disconnected, payment of any undisputed amount must be made by the "Due By" date.**

**TELEPHONE MODEM AND BATTERY BACK-UP**
Telephone Modem and back-up battery shall remain the property of Cox and must be returned upon termination of service. If telephone modem is disconnected or removed and battery is not charged or otherwise fails, telephone service including access to emergency 911 services will not be available.

**REPAIR SERVICE NUMBERS - 24 HOUR HELP LINE**
Cox Cable TV, Cox Digital Cable, Cox High Speed Internet
San Diego, East and South County ............................................... 619-262-1122
North County ............................................................................... 760-599-6060
**Cox Digital Telephone**
San Diego, East, South & North County ..................................... 888-222-7743
Cox Digital Telephone Customer ............................................................ 611
Cox Business Services ................................................................ 866-269-7555

**FOR PIVOT CUSTOMER ONLY**
Pivot services are provided by Sprint. Cox Communications is acting as Sprint's agent for purpose of providing service and collecting invoices. Please contact Cox Communications for questions regarding services under this invoice.
**ADDITIONAL SPRINT CHARGES**
Charges assessed on Sprint that Sprint elects to pass on to customers and those intended to recover the administrative and other costs of complying with certain government programs and mandates (e.g., Wireless Number Pooling and Portability, E911 and USF). Charges that appear in this section, also called "Sprint Fees," are not taxes or government-imposed fees. For more information, visit www.cox.com.
**SPRINT'S GOVERNMENT FEES AND TAXES**
Taxes and fees Sprint is required to collect from customers on behalf of the government.

---

For repair and billing inquiries, please contact Cox at 619 262-1122 or 760 599-6060. If the Cox representatives have not been able to resolve your concern(s), you may want to contact the Local Cox Cable TV Franchise Authority for your area: Camp Pendleton, Franchise Administrator, P.O. Box 1609, Oceanside, CA 92051, or call 760-725-3233; City of Chula Vista, City Manager's Office, 276 Fourth Ave., Chula Vista, CA 91910, or call 619-585-5683: City of El Cajon, City Manager's Office, 200 East Main St., El Cajon, CA 92020, or call 619-441-1716; City of Encinitas, 505 S. Vulcan Ave., Encinitas, CA 92024 or call 760-633-2640; City of Escondido, 201 N. Broadway, Escondido, CA 92025, or call 760-839-4676; City of Imperial Beach, City Manager's Office, 825 Imperial Beach Blvd., Imperial Beach, CA 91932, or call 619-423-8303; City of La Mesa, Administrative Services, 8130 Allison Ave., La Mesa, CA 91941, or call 619-463-6511; City of Lemon Grove, City Manager's Office, 3232 Main St., Lemon Grove, CA 91945, or call 619-825-3800; City of National City, City Manager's Office, 1243 National City Blvd., National City, CA 91950, or call 619-336-4240; City of Oceanside, 300 N. Coast Hwy., Oceanside, CA 92054, or call 760-435-5018; City of Poway, City Manager's Office, P.O. Box 789, Poway, CA 92074, or call 858-668-4590; City of San Diego, Cable Administration, 202 C St., MS IIA, San Diego, CA 92101, or call 619-236-6010; City of San Marcos, 1 Civic Center Dr., San Marcos, CA 92069, or call 760-481-3812; City of Santee, City Manager's Office, 10601 Magnolia Ave., Santee, CA 92071, or call 619-258-4180 ext.100; City of Solana Beach, 635 South Hwy. 101, Solana Beach, CA 92075, or call 858-720-2400; City of Vista, 600 Eucalyptus Ave., Vista, CA 92084, or call 760-639-6144; County of San Diego Dept. of Planning Review Commission, 5200 Pacific Hwy., #208, San Diego, CA 92101, or call 619-595-4650.

   

sx570001

# DECLARATION OF OLIVER MACINTOSH

My name is Oliver MacIntosh. I am 39 years old and I live at the Pathfinder's Shelter Care Plus apartment complex, 5908 Streamview Dr., Apartment No. 2, San Diego, CA. 92105, where I have resided for the last two years. I am a personal friend of Lyle J. Hitchcock and I have known him for the two years that I have lived at this address on Streamview Dr.

1. At 8:00 a.m. on the morning of October 4, 2007, Mr. Hitchcock called me over to his apartment located across the courtyard from my apartment at Streamview Dr. His address is 5902 Streamview Dr., Apt. No. 2. As I entered I saw Jeff Jones another resident at the apartments and a resident-staff member of Pathfinder's. He was leaving the apartment.

2. Mr. Hitchcock called me into the bedroom of his roommate Todd Blethen. The instant that I walked in I noticed the very pungent smell of marijuana. Mr. Hitchcock asked me to verify to him what in fact was the nature of the smell. I stated, "that is the smell of cheap Mexican marijuana which just been smoked in this room". He thanked me and I left his apartment.

I swear the above is true and correct to the best of my knowledge under the Constitution and the laws of the United States. (Title 28 U.S.C. 1746).

Dated: __11/16/07__          Signed: _____
                                          Oliver MacIntosh

                             Witness: _____


**EXHIBIT S**

**-10-**

# PATHFINDERS SHELTER PLUS CARE RESIDENT GUIDELINES

You have expressed a desire to stop drinking, using drugs, and to address your physical and mental health problems. Our goal is to assist you in every way possible to achieve these goals. YOU are responsible in helping us meet those needs. Your conformance to the guidelines is essential to be able to offer you assistance during your stay at Pathfinders Shelter Plus Care.

Listed below are the rules and regulations you MUST follow to allow you and your fellow residents to reside harmoniously in a safe, serene and sober atmosphere.

If you need better clarification of a guideline or how to conduct yourself at Pathfinders Shelter Plus Care, talk to one of the STAFF. Do not ask another resident. He may be as unknowledgeable as you are about a particular rule. Always bring your problems or complaints about your conduct as a resident to the STAFF. They are the only people who can give you a definite answer. Do NOT harbor feelings of misunderstanding until they become a resentment. "Resentments can be deadly!"

## PATHFINDERS SHELTER PLUS RULES AND REGULATIONS

The following rules and regulations, if violated, carry the possibility of a verbal or formal warning or a written violation notice ("write-up"). If these are considered serious enough or occur frequently, they can lead to expulsion from the Pathfinders Shelter Plus Care Program of recovery and residency.

Those regulations marked with a ** can cause immediate termination of residency. Staff will determine appropriate corrective action when reviewing those marked with a *. Three such "write-ups" can be grounds for termination from the program.

1. ** CURFEW; All residents must be in their living quarters by eleven (11) o'clock every night of the week. Lights out is up to your discretion as long as you do not disturb another resident. Be considerate of fellow residents at all times! E.g., no open doors, loud music or T.V., or waking others after 10:00 P.M..

2. ** DRINKING AND/OR DRUGGING: There is no tolerance of any evidence of alcohol or illegal mind-altering drug or substance of any kind. If you are found to be under the influence of such substances you can be expelled from the residence at any hour of the day or night. If you have the appearance of being under the influence, you will be confronted and asked to explain.



EXHIBIT 6

-11-



If you know of another resident drinking or using, IT IS YOUR RESPONSIBILITY TO INFORM STAFF IMMEDIATELY! Failure to do so may result in YOUR expulsion from the program. Pathfinders Shelter Plus Care cannot be a safe and positive environment if ANYONE allows this behavior to go on.

3. ** PRESCRIPTION MEDICATIONS: Possession of non authorized prescription drugs may be grounds for immediate dismissal from the program.

* ALL prescription medications MUST be reported to the staff upon acceptance for residency at Pathfinders Shelter Plus Care. Any change in medication or dosage MUST be reported to staff when changed by your doctor. Changing dosage or eliminating medications without the express permission of your doctor is not allowed and constitutes self medication. If self medicating is practiced for any reason including running out and not renewing prescriptions, medications may be administered by staff.

4. ** VIOLENCE: Violence, threats of violence or intimidation of any kind, as perceived by staff, WILL NOT be tolerated and are grounds for immediate expulsion from the Pathfinders Shelter Plus Care Program and residency. All problems with other residents and/or staff can be resolved in a calm atmosphere. If you do not have enough serenity to calmly resolve your disagreements or misunderstandings with another resident, bring it to STAFF. In any case, DO NOT HARBOR YOUR BAD FEELINGS! Bring them out into the open at the appropriate time.

**AVOID CLASHES WITH OTHERS. When talking to or about a fellow resident, ask yourself if what you are communicating is: 1/ entirely the truth, 2/ really necessary to your relationship with him, and 3/ kind and respectful to that person. This will go a long way toward being treated the way YOU would like to be treated.

5. * DRESS AND CONDUCT CODES: All residents are expected to present themselves well groomed, in appropriate dress and conduct themselves in a responsible manner when in public. We are all responsible for the public image of ourselves and hence the Pathfinders Shelter Plus Care program wherever we are; in our neighborhood, at meetings, or anywhere in our society.

*All residents are expected to be fully dressed (including shoes), and well groomed in all public places, including around other residents at morning meetings and whenever outside your own living space.

*All food will be consumed in your own apartment. Donated food will be thrown out before 5 P.M.. Do not leave garbage bags in the hallways; take it out immediately.

**SMOKING is prohibited in the buildings. Smoking is allowed in the front of the building or on the rear stairs. Put all cigar and cigarette butts in the butt cans. CLOSE THE REAR DOORS WHEN FINISHED SMOKING IF NO ONE ELSE IS PRESENT! Inform the last person present that he is responsible for securing the door.

2

EXHIBIT 6

- 12 -

*ALWAYS keep staff informed of your coming and goings, lateness to meetings, etc. If you are not feeling well, inform the staff whether or not you will be able to fulfill the program requirements. In any case, staff always needs to know when you are not physically well.

*At the University Avenue apartments there are two FIRE EXIT DOORS at the rear of the building on the second and third floors of the residence building. Make sure that these doors are closed at all times for fire and security reasons except when residents are on the steps or landings. Residents may gather and smoke on the steps and/or landings but must make sure the doors are closed when another resident is not present. Failure to be vigilant about this rule will result in smoking privileges being revoked, besides being written up. This rule is NOT applicable to the Streamview apartments.

6. * HOUSING RULES AND CHORES: Good housekeeping habits are a Pathfinders tradition. Residents should take pride in the place they live, both inside and outside, just as they should take pride in their own appearance and fitness. You will be expected to keep your living space and the residential building up to certain standards.

* CHORES will be assigned for the maintenance of the building on a list posted in the day/common room. Outside chores will be completed prior to 7:30 A.M. Inside chores will be completed by the time agreed on with the resident manager or assistant manager. If the chore is not completed by the time agreed on, additional chores will be assigned on the weekend or other agreed on time. It is YOUR responsibility to consult the list daily and arrange for the completion of the chore(s) on time. If, due to prior commitments or illness, you cannot do the chore at the assigned time, YOU must arrange to complete the chore by consulting STAFF.

*BEDS must be made up neatly by 7:30 each day. Wash dishes, clean counters, sweep or mop bathroom and kitchen floors and neatly store clothes and belongings each day before you leave the building. Bedding must be washed on a regular basis (every time you do your regular wash, or biweekly, at least). Living quarters will be inspected every week and followed up to make sure discrepancies are corrected prior to your leaving. Inspections or spot checks can be made at anytime during the week. Trash cannot be left in hallways or outside the entrances; take it to the dumpster directly. You are issued a dumpster key along with your apartment and mailbox keys. Lost keys MUST be reported immediately.

* ATTENDANCE at the 7 A.M. (Streamview) or 7:45 A.M. (North Park) mandatory morning meetings, must be ON TIME, Monday through Friday. The Program Director MUST be notified PRIOR to the meeting if you are going to be late or absent.



EXHIBIT 6

—13—

7. * MEALS: When preparing your own meals clean up and put away any foodstuffs immediately after finishing. Meals at the recovery home are well prepared and nutritious. You are entitled to eat there Monday through Saturday for lunch and dinner. Shelter Plus Care residents are entitled to eat lunch and/or dinner at the recovery home. Notify the cook that you will be there for a particular meal. You must be there at 11:45 for lunch, and 4:45 for dinner to participate in set-up and volunteer for tear down, cleanup and dishes afterwards.

8. * RESTRICTION: Restriction to the Shelter Plus Care premises is in effect for the first 30 days of residency. Residents are not allowed to leave unless accompanied by another resident who is not on restriction. STAFF must be informed of the purpose of your absence. Restriction limits may be reduced or extended at the discretion of STAFF especially in the event of an early write-up.

9. * VISITORS:   Residents are encouraged to have relatives and friends visit.  Your guests must be alcohol and drug free.  Guests who appear otherwise will be asked to leave.  NO women,
children, or significant others are allowed in the apartments at any time. Visiting hours are from 10 A.M. until 10 P.M. **Make your guests aware of these hours and politely ask them to vacate by 10 P.M.

10. * OVERNIGHT STAYS: After 90 days in the program and your bill is currently paid, visits to outside friends or relatives overnight may be requested.  Written requests must be submitted to staff for approval.

11. * EMPLOYMENT: There will be no full-time or part-time employment for the first 90 days of residency without staff approval.  After 90 days staff must be made aware of employment efforts and will offer assistance and approval when appropriate.

12. * RENT SCHEDULE: While a resident at Pathfinders Shelter Plus Care, the monthly rent is paid according to HUD guidelines.  Rent is due on the first of each month, and in arrears after the 5th.  If you are unable to pay on time, you must discuss it with staff so other arrangements can be made.

I have read, or have had read to me, and fully understand the above guidelines for residency at Pathfinders Shelter Plus Care.

Resident signature _____

Witnessing Staff _____

EXHIBIT 6

- 14 -

# PATHFINDERS SHELTER PLUS CARE

## *Personal Rights*

To be accorded dignity in his/her personal relationships with staff and other individuals

To be accorded safe, healthful and comfortable accommodations (e.g. furnishings and equipment) to meet his/her needs.

To be free from intellectual, emotional and/or physical abuse.

To be informed of the provisions of law regarding complaints including, but not limited to, the address and telephone number of the licensing agency.

To be free to attend religious services or activities of his/her choice and to have visits from a spiritual advisor provided that these services or activities do not conflict with facility program requirements. Participation in religious services will be voluntary only.

To be provided with confidentiality in accordance with federal regulations.

ACKNOWLEDGEMENT:

I have been personally advised and have received a copy of my personal rights.

_____        8-4-03
Residents Signature                           Date

**EXHIBIT 6**

**-15-**

# PATHFINDERS OF SAN DIEGO
## SHELTER PLUS CARE
## OCCUPANCY AGREEMENT
### (Month to Month)

1. This Agreement entered into this _4th_ day of _August_,
200_3_ by and between Pathfinders of San Diego, Inc., landlord and
_LYLE HITCHCOCK_, resident.

2. Rent is due on the 1st day of each month. The portion of the
rent payable by the resident shall be an amount determined by the
landlord in accordance with HUD regulations and requirements. The
amount of the resident's rent is subject to change as determined
by the landlord. Any change in the amount of the resident's rent
will be stated in a written notice by the landlord to the
resident stating the new amount and the effective date of the
change. Initially and until such change, the resident agrees to
pay ____0____ per month to the landlord as resident rent.

3. Premises shall be occupied only by the following named
persons:

_Michael Millop_ _LYLE HITCHCOCK_

#### THERE WILL BE NO OVERNIGHT GUESTS!

4. No bird or animal shall be kept in or about said premises.

5. Resident shall not violate any Governmental law in the use of
the premises, commit waste or nuisance, annoy, molest or
interfere with any other resident or neighbor.

6. Resident shall keep the premises and furniture, furnishings
and appliances and fixtures in good order and condition. Resident
shall pay Owner for cost to repair, replace or rebuild any
portion of the premises damaged by the resident, resident's
guests or invitees.

7. Resident shall pay for the following utilities and services:
____0____

8. No portion of said premises shall be sublet nor can this
agreement be assigned to another person by the resident.

9. Either party may terminate this agreement by giving a thirty
(30) day written notice to the other party.

The undersign acknowledge having read and understood the
foregoing as well as the attached S+C program agreement.

_____   _____
Landlord          Resident

**EXHIBIT 7**

**—16—**

will be used to prevent the misuse of funds.

(Approved by the Office of Management and Budget under control number 2506–0118)

[58 FR 13892, Mar. 15, 1993, as amended at 61 FR 51171, Sept. 30, 1996]

### § 582.305 Housing quality standards; rent reasonableness.

(a) *Housing quality standards.* Housing assisted under this part must meet the applicable housing quality standards (HQS) under § 982.401 of this title—except that § 982.401(j) of this title does not apply and instead part 35, subparts A, B, K and R of this title apply—and, for SRO under § 882.803(b) of this title. Before any assistance will be provided on behalf of a participant, the recipient, or another entity acting on behalf of the recipient (other than the owner of the housing), must physically inspect each unit to assure that the unit meets the HQS. Assistance will not be provided for units that fail to meet the HQS, unless the owner corrects any deficiencies within 30 days from the date of the lease agreement and the recipient verifies that all deficiencies have been corrected. Recipients must also inspect all units at least annually during the grant period to ensure that the units continue to meet the HQS.

(b) *Rent reasonableness.* HUD will only provide assistance for a unit for which the rent is reasonable. For TRA, PRA, and SRA, it is the responsibility of the recipient to determine whether the rent charged for the unit receiving rental assistance is reasonable in relation to rents being charged for comparable unassisted units, taking into account the location, size, type, quality, amenities, facilities, and management and maintenance of each unit, as well as not in excess of rents currently being charged by the same owner for comparable unassisted units. For SRO, rents are calculated in accordance with 24 CFR 882.805(g).

[58 FR 13892, Mar. 15, 1993, as amended at 61 FR 51171, Sept. 30, 1996; 64 FR 50226, Sept. 15, 1999]

### § 582.310 Resident rent.

(a) *Amount of rent.* Each participant must pay rent in accordance with section 3(a)(1) of the U.S. Housing Act of 1937 (42 U.S.C. 1437a(a)(1)), except that in determining the rent of a person occupying an intermediate care facility assisted under title XIX of the Social Security Act, the gross income of this person is the same as if the person were being assisted under title XVI of the Social Security Act.

(b) *Calculating income.* (1) Income of participants must be calculated in accordance with 24 CFR 5.609 and 24 CFR 5.611(a).

(2) Recipients must examine a participant's income initially, and at least annually thereafter, to determine the amount of rent payable by the participant. Adjustments to a participant's rental payment must be made as necessary.

(3) As a condition of participation in the program, each participant must agree to supply the information or documentation necessary to verify the participant's income. Participants must provide the recipient information at any time regarding changes in income or other circumstances that may result in changes to a participant's rental payment.

[66 FR 6225, Jan. 19, 2001]

### § 582.315 Occupancy agreements.

(a) *Initial occupancy agreement.* Participants must enter into an occupancy agreement for a term of at least one month. The occupancy agreement must be automatically renewable upon expiration, except on prior notice by either party.

(b) *Terms of agreement.* In addition to standard lease provisions, the occupancy agreement may also include a provision requiring the participant to take part in the supportive services provided through the program as a condition of continued occupancy.

### § 582.320 Termination of assistance to participants.

(a) *Termination of assistance.* The recipient may terminate assistance to a participant who violates program requirements or conditions of occupancy. Recipients must exercise judgment and examine all extenuating circumstances in determining when violations are serious enough to warrant termination, so that a participant's assistance is terminated only in the most severe

EXHIBIT 8

—17—

cases. Recipients are not prohibited from resuming assistance to a participant whose assistance has been terminated.

(b) *Due process.* In terminating assistance to a participant, the recipient must provide a formal process that recognizes the rights of individuals receiving assistance to due process of law. This process, at a minimum, must consist of:

(1) Written notice to the participant containing a clear statement of the reasons for termination;

(2) A review of the decision, in which the participant is given the opportunity to present written or oral objections before a person other than the person (or a subordinate of that person) who made or approved the termination decision; and

(3) Prompt written notice of the final decision to the participant.

### §582.325 Outreach activities.

Recipients must use their best efforts to ensure that eligible hard-to-reach persons are served by S+C. Recipients are expected to make sustained efforts to engage eligible persons so that they may be brought into the program. Outreach should be primarily directed toward eligible persons who have a nighttime residence that is an emergency shelter or a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings (*e.g.*, persons living in cars, streets, and parks). Outreach activities are considered to be a supportive service, and the value of such activities that occur after the execution of the grant agreement may be included in meeting the matching requirement.

### §582.330 Nondiscrimination and equal opportunity requirements.

(a) *General.* Recipients may establish a preference as part of their admissions procedures for one or more of the statutorily targeted populations (*i.e.*, seriously mentally ill, alcohol or substance abusers, or persons with AIDS and related diseases). However, other eligible disabled homeless persons must be considered for housing designed for the target population unless the recipient can demonstrate that there is sufficient demand by the target population for the units, and other eligible disabled homeless persons would not benefit from the primary supportive services provided.

(b) *Compliance with requirements.* (1) In addition to the nondiscrimination and equal opportunity requirements set forth in 24 CFR part 5, recipients serving a designated population of homeless persons must, within the designated population, comply with the prohibitions against discrimination against handicapped individuals under section 503 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at 41 CFR chapter 60–741.

(2) The nondiscrimination and equal opportunity requirements set forth at part 5 of this title are modified as follows:

(i) The Indian Civil Rights Act (25 U.S.C. 1301 *et seq.*) applies to tribes when they exercise their powers of self-government, and to IHAs when established by the exercise of such powers. When an IHA is established under State law, the applicability of the Indian Civil Rights Act will be determined on a case-by-case basis. Projects subject to the Indian Civil Rights Act must be developed and operated in compliance with its provisions and all implementing HUD requirements, instead of title VI and the Fair Housing Act and their implementing regulations.

(ii) [Reserved]

(c) *Affirmative outreach.* (1) If the procedures that the recipient intends to use to make known the availability of the program are unlikely to reach persons of any particular race, color, religion, sex, age, national origin, familial status, or handicap who may qualify for assistance, the recipient must establish additional procedures that will ensure that interested persons can obtain information concerning the assistance.

(2) The recipient must adopt procedures to make available information on the existence and locations of facilities and services that are accessible to persons with a handicap and maintain evidence of implementation of the procedures.

243

**EXHIBIT 8**

**–18–**

# PATHFINDERS SHELTER PLUS CARE
# NORTH PARK APARTMENTS

# 30 DAY NOTICE TO VACATE

TO _____ Lyle Hitchcock _____

Address_____ 5902 Streamview Drive # 2 ____

_____
City:  San Diego, County:  San Diego, California.

    PLEASE TAKE NOTICE that you are hereby required within Thirty 30 days to deliver up possession of the above-described premises. This was agreed to by you in the signed Occupancy Agreement re:

**"Either party may terminate this agreement by giving a thirty (30) day written notice to the other party. The resident's personal property will be bagged and secured for a period of no longer than ninety days from the resident vacating the premises."**

    Should you fail to comply with this notice, legal proceedings will be instituted against you to recover said premises and such damages as the law allows.

Dated this ___31st___ day of _____July_____, ___2007___

                                       Owner /Manager

---

**PROOF OF SERVICE**

I, the undersigned, being at least 18 years of age, declare under penalty of perjury that I

served the above notice, of which this is a true copy, on the above-mentioned tenant in

possession in the manner(s) indicated below:

    On _____July 31_____, _2007_ I handed the notice to the tenant.

    I posted the notice in a conspicuous place at the tenant's residence on _____, _____ after attempting service in the manner indicated above.

      Executed on, ___July 31___, _2007_ at the City of: San Diego, County of: San Diego, State of California.

EXHIBIT 9

-19-

# PATHFINDERS SHELTER PLUS CARE
## STREAMVIEW APARTMENTS

October 5, 2007

To: Mr. Lyle Hitchcock,
5902 Streamview Drive #2
San Diego, CA 92105

The reason you are being asked to leave Pathfinders Shelter Plus Care is because Pathfinders feels that you are no longer receiving the benefits of our program of recovery. We have had many discussions with you about attending required meetings both in house and outside. Many verbal and written warnings and write-ups about meeting attendance have been given over the four years since entering the S+C program. You have used every excuse to avoid attending these meetings even though we have offered transportation to most of them. The same applies to your mental health regimen. You do not participate in group meetings or attend any outpatient program on a regular basis and have refused to sign the proper confidentiality documents allowing us to consult with your psychiatric doctor.

Pathfinders of San Diego requires the same rules to be followed by all tenants at Shelter Plus Care. Since you have in general chosen not to follow the program guidelines you have been given 60 days notice (dated and witnessed on 7/31/2007) to vacate and your HUD subsidy is revoked as agreed to in your occupancy agreement. Your rent now increases to the full market rent as determined by HUD. It is now $575.00 for the month of October and thereafter. In addition legal proceedings will follow to evict you if necessary and you will be liable for the costs incurred. The applicable terms of your signed rental agreement are as follows:

5. Resident shall not violate any governmental law in the use of the premises, commit waste or nuisance, annoy, molest or interfere with any other resident or neighbor or <u>fail to conform to the Shelter Plus Care Guidelines</u>. Any violation of the above shall constitute the residents rejection of the S+C program and the rent will revert to full fair market rent (HUD) and will be due from that day on.

9. Either party may terminate this agreement by giving a thirty (30) day written notice to the other party. The resident's personal property will be bagged and secured for a period of no longer than ninety days from the resident vacating the premises.

This occupancy agreement was reviewed by you and a staff member and signed by you. You acknowledged having read (or have read to), understood and accepted the occupancy agreement.

Lamentably,

Richard Burtz, Program Manager

EXHIBIT 10
- 20 -

SOCIAL SECURITY ADMINISTRATION

Date: October 19, 2004
Claim Number: 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A
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DI

LYLE J HITCHCOCK
5908 STREAM VIEW DR
APT 3
SAN DIEGO CA 92105-3933

**SOCIAL SECURITY ADMIN.**
**1333 FRONT ST.**
**SAN DIEGO, CA 92101**

You asked us for information from your record. The information that you
requested is shown below. If you want anyone else to have this information, you
may send them this letter.

Information About Supplemental Security Income Payments

Beginning January 2004, the current
Supplemental Security Income payment is...............$ 790.00

This payment amount may change from month to month if income or
living situation changes.

Supplemental Security Income Payments are paid the month they are due. (For
example, Supplemental Security Income Payments for March are paid in March.)

EXHIBIT 11

-21-

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

07 NOV 20 AM 11: ORIGINAL

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

## I. (a) PLAINTIFFS

Lyle J. Hitchcock

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

Stanley Stanley
Pathfinder's of San Diego

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

'07 CV 2211    BEN NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
         Plaintiff

☒ 3  Federal Question
         (U.S. Government Not a Party)

☐ 2  U.S. Government
         Defendant

☐ 4  Diversity
         (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 42 USC 1983, 1985 (3), 1986

Brief description of cause:
Civil Rights Violations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
$3,010,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  11/20/07

SIGNATURE OF ATTORNEY OF RECORD  Lyle J Hitchcock

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____